<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                        :
MACGOOHAN ROMELUS,         :
                        :   Civil Action No. 04-1841 (FSH)
        Petitioner,   :
                        :
       v.            :     **O P I N I O N**
                        :
ROY L. HENDRICKS, et al.,   :
                        :
        Respondents.  :
_____:

**APPEARANCES:**

Macgoohan Romelus, <u>Pro</u> <u>Se</u>
#275762/383188C
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

H. John Witman, III
Deputy Attorney General
Office of the Attorney General
Appellate Bureau
P.O. Box 086
Trenton, NJ 08625

**HOCHBERG, District Judge**

    Petitioner, Macgoohan Romelus, filed the within petition for

a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.

Respondents have filed an Answer.  The Court has considered all

submissions.

**BACKGROUND**

1.    Factual Background[1]

Mezaac Pierre, of Haitian descent, was shot and wounded on March 18, 1994.  On March 20, 1994, at about 3:00 a.m., a group of eight people, including victim Jerry Myers, were arguing on a front lawn in Elizabeth, New Jersey.  As they argued, they witnessed two luxury cars drive and stop in front of the house. One of the witnesses observed a front seat passenger loading a gun.

The individual armed with the handgun, later identified as Petitioner, got out of the car and announced, "I got you now," and began firing the gun.  It appears that more people then got out of the cars and started to fire guns.  The group began to run in different directions, pursued by the gunmen.  One of the group heard Petitioner instruct the victim, Jerry Myers, who had his hands up, not to run.  Trial testimony revealed that Petitioner shot Myers in the back, and Myers fell onto his stomach. Petitioner rolled Myers over and pulled on his jacket and patted down his clothing.  He then kicked Myers and grabbed Myers' gold necklace.

---

[1]  The factual background of this case is somewhat complex due to the number of individuals involved as perpetrators and witnesses.  This factual background, which is not all-inclusive, was taken from the opinion of the Appellate Division on Petitioner's direct appeal (Respondents' Appendix "Ra" 7; State v. Romelus, A-2717-95T4 (Aug. 19, 1999)).

Petitioner then ran up to three of the group and addressed one of them by name, revealing a Haitian accent. Petitioner held the gun at one of them and told them "something along the lines of if I wanted you dead, you would be dead. We know who we came for." Petitioner then returned to one of cars, as did the other gunmen, and they sped off.

Petitioner was identified by three witnesses as the first gunman and the person who killed Myers. Petitioner was described as having a large, distinctive nose. The record indicates that Petitioner had an unusually large nose, disfigured by acne, and was called "Broccoli Nose" on the street.

Four days after the crime, Petitioner was arrested. He told police that he was at a tavern in Newark at the time of the crime. However, about three weeks later, Petitioner gave a statement to police that conflicted with the alibi defense. Petitioner told police that prior to the shooting one of his co-defendants told him that they had to "get even" with black Americans because of the shooting of Mezaac Pierre. Petitioner told the police that on the night of the shooting, he was at a party along with a co-defendant and the victim, Jerry Myers. The co-defendant and Myers had an argument and the co-defendant shot Myers. Petitioner told police that the co-defendant then rolled Myers over and took his necklace.

3

Petitioner testified in his own defense at trial, and disclaimed his statement to the police.  He presented the alibi defense at trial, stating that he was at a tavern in Newark at the time of the crime.  He presented three alibi witnesses to corroborate his defense; however, one of the witnesses declined to testify after being advised by the trial judge of his privilege against self-incrimination.

2.  Procedural History

In 1994, a Union County Grand Jury indicted the petitioner on seven counts, including: murder, contrary to N.J.S.A. 2C:11-3(a)(1) or (2) (counts one and two); attempted murder, contrary to N.J.S.A. 2C:11-3(a)(1) and N.J.S.A. 2C:5-1(a)(1), (2), or (3) (count three); felony murder, contrary to N.J.S.A. 2C:11-3(a)(3) (count four); robbery, contrary to N.J.S.A. 2C:15-1 (count five); possession of a weapon for an unlawful purpose, contrary to N.J.S.A. 2C:39-4(a) (count six); and unlawful possession of a weapon, contrary to N.J.S.A. 2C:39-5(b) (count seven). Petitioner was charged in the indictment along with three co-defendants.  Prior to trial Petitioner's case was severed.

Pretrial hearings pursuant to Miranda and Wade were held in March, May, and June, 1995.[2]  Petitioner was tried by jury from July 5, 1995 to July 20, 1995, in the Superior Court of New

---

[2]  See Miranda v. Arizona, 384 U.S. 436 (1964); United States v. Wade, 388 U.S. 218 (1967).

4

Jersey, Law Division, Union County ("Law Division").  The jury
found the petitioner guilty on all counts of the indictment,
including as an accomplice to murder.  On October 6, 1995, the
petitioner was sentenced to an aggregate sentence of 70 years
imprisonment with 40 years of parole ineligibility.

Petitioner appealed his conviction and sentence.  In a <u>per
curiam</u> decision dated August 19, 1999, the Superior Court of New
Jersey, Appellate Division ("Appellate Division") affirmed the
conviction, and sentence.  (<u>State v. Romelus</u>, A-2717-95T4 (Aug.
19, 1999)).  On January 19, 2000, Petitioner's petition for
certification was denied by the New Jersey Supreme Court.  (<u>State
v. Romelus</u>, 163 N.J. 11 (2000)).

Petitioner filed a motion for Post-Conviction Relief ("PCR")
in the trial court.  The petition was denied without an
evidentiary hearing.  The petitioner appealed the denial, and on
June 24, 2003, the denial was affirmed by the Appellate Division.
(<u>State v. Romelus</u>, A-3003-01T4 (Jun. 24, 2003)).  Petitioner's
petition for certification to the New Jersey Supreme Court was
denied on October 13, 2003.  (<u>State v. Romelus</u>, 178 N.J. 31
(2003)).

The instant petition was received and filed on April 19,
2004.  On April 30, 2004, Petitioner was advised of his rights
pursuant to <u>Mason v. Meyers</u>, 208 F.3d 414 (3d Cir. 2000).  On

August 23, 2004, the respondents filed an Answer and the state court record.

## PETITIONER'S CLAIMS

Petitioner asserts the following arguments for habeas relief:

1.  Petitioner was denied his right to conflict-free counsel.

2.  Petitioner was deprived of effective assistance of counsel.

3.  Petitioner was denied due process because the identifications of petitioner by certain witnesses were not reliable.

4.  Petitioner's oral and written statements were taken in violation of his Sixth Amendment right to counsel.

5.  Petitioner was deprived his right to present a defense when the trial court's improper advice to a proposed defense witness caused the witness to invoke his privilege against self-incrimination and to not testify.

6.  The trial court's instruction on identity deprived Petitioner of due process.

7.  The trial court's instruction on accomplice liability deprived Petitioner of due process.

See Petition for Writ of Habeas Corpus, ¶ 11.

Petitioner has raised the instant claims before the New Jersey state courts.  Therefore, they are properly before this Court for a decision on the merits.  See 28 U.S.C. § 2254(b)(1).

## DISCUSSION

**A.    Standards Governing Petitioner's Claims.**

Section 2254 of Title 28, United States Code, provides that the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus.  The statute reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in

7

> light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court explained the application of § 2254(d)(1).  The Court analyzed subsection 1 as two clauses:  the "contrary to" clause and the "unreasonable application" clause.  The Court held that under the "contrary to" clause, "a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Id. A federal court may grant the writ under the "unreasonable application" clause, if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  Habeas relief may not be granted under the "unreasonable application" clause unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  See id. at 411; see also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir.), cert. denied, Matteo v. Brennan, 528 U.S. 824 (1999).  Thus, the federal court must

8

decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.  See Werts, 228 F.3d at 197; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

With regard to 28 U.S.C. § 2254(d)(2), a federal court must confine its examination to evidence in the record.  See Abu-Jamal v. Horn, 2001 WL 1609690, at *12 (E.D. Pa. December 18, 2001). In addition, the state court record should be reviewed to assess the reasonableness of the state court's factual determinations. See id.  Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  Id.; see also 28 U.S.C. § 2254(e)(1).  The Court of Appeals for the Third Circuit has ruled that this presumption of correctness can be overcome only by clear and convincing evidence.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001)(citing 28 U.S.C. § 2254(e)(1)).  "A finding that is well-supported and subject to the presumption of correctness is not unreasonable."  Abu-Jamal, 2001 WL 1609690 at *12 (citing Duncan, 156 F.3d at 198).

Furthermore, federal habeas courts ordinarily refrain from revisiting credibility determinations as "it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on

9

habeas review." <u>Sanna v. Dipaolo</u>, 265 F.3d 1, 10 (1st Cir.
2001).  A habeas petitioner therefore "must clear a high hurdle
before a federal court will set aside any of the state court's
factual findings." <u>Mastracchio v. Vose</u>, 274 F.3d 590, 597-98
(1st Cir. 2001).

A pro se pleading is held to less stringent standards than
more formal pleadings drafted by lawyers.  <u>See</u> <u>Estelle v. Gamble</u>,
429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520
(1972).  A <u>pro</u> <u>se</u> habeas petition and any supporting submissions
must be construed liberally and with a measure of tolerance.  <u>See</u>
<u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v.</u>
<u>Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989); <u>United</u>
<u>States v. Brierley</u>, 414 F.2d 552, 555 (3d Cir. 1969), <u>cert.</u>
<u>denied</u>, 399 U.S. 912 (1970).

**B.   <u>Petitioner's Claims Regarding Ineffective Counsel</u>**

1.   <u>Conflict-Free Counsel</u> (Ground One)

Petitioner asked for different counsel before jury selection
due to Petitioner's disagreement with counsel on whether to
proceed with the alibi defense, contrary to the statement that he
had given to police.  His request was denied.  (Ra 26 at pp. 4-
12).  The trial judge ruled that Petitioner could present his
alibi defense.  Counsel said he would represent Petitioner and
that he would "do [his] best to fulfill [his] client's wishes
within the bounds of the Rules of Evidence."  (Ra 26 at p. 6).

Counsel requested to be relieved as counsel before presentation of the defense's case, asking to withdraw for ethical reasons.  However, the court denied the request, finding that counsel had no proof that Petitioner was perpetrating a fraud on the court.  (Ra 34 at pp. 39-43).  Indeed, Petitioner stated that he wished counsel to continue to represent him.  (Ra 34 at p. 43).

Petitioner objects to counsel's comments in summation, where counsel commented that if even if the jury thought that Petitioner was lying about the alibi, that fact of him lying does not mean he is guilty of murder.  Counsel stated, "I want you to bear that in mind if that's what you decide, because I submit to you I think that that's the more rational explanation."  (Ra 36 at p. 24).

Petitioner argues that counsel's comments demonstrated that he had a conflict of interest because counsel's ethics conflicted with Petitioner's alibi defense- a defense counsel believed was untrue.  He further argues that counsel's ethics caused him to abandon Petitioner's alibi defense during summation, and that counsel had a duty to present that defense.

2.  <u>Counsel's Alleged Abandonment of the Alibi Defense</u>
    (Ground Two)

Petitioner also argues that counsel was ineffective because he abandoned Petitioner's alibi defense in summation and also

11

conceded Petitioner's guilt of the crimes of robbery and felony murder.  Counsel stated in summation:

> Now, the state wants you to believe, and I'm anticipating, this was a robbery.  Ladies and gentlemen, that may have been true for Mr. Romelus, but as to the others, they came there for one purpose and one purpose only, and that was to murder Richard Jerry Myers.  . . .
>
> My client, Mr. Romelus, didn't share that purpose. If you are going to rob somebody, you are going to chase them and fire a gun at them?  No.  You are going to go up and you are going to stick a gun in their face and say, "Give it up.  Hand over your cash.  I want it now."  If you are going to rob somebody, you rob them, you don't shoot them.
>
> * * *
>
> . . . and I submit to you, ladies and gentlemen, that robbery, Mr. Romelus went there to commit a robbery of the crowd . . . .

(Ra 36 at pp. 30-33).

Petitioner argues that counsel's concessions "diluted the State's burden of proof and denied Petitioner due process."  He states that these concessions constituted ineffective assistance, and were based on counsel's misunderstanding of the law of felony murder.  (Petition, p. 6).

3.  <u>Analysis</u>

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court held that in order to establish that trial counsel is ineffective, the petitioner must show that "counsel's performance was deficient," in that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed

12

. . . by the Sixth Amendment," and "that the deficient
performance prejudiced the defense." Id. at 687.  In order to
establish prejudice, the defendant must show "a reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different." State v.
Fritz, 105 N.J. 42, 60-61 (1997)(quoting Strickland, 466 U.S. at
694).  "In any case presenting an ineffectiveness claim, the
performance inquiry must be whether counsel's assistance was
reasonable considering all the circumstances." Strickland, 466
U.S. at 688.  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be
> highly deferential. It is all too tempting for a
> defendant to second-guess counsel's assistance after
> conviction or adverse sentence, and it is all too easy
> for a court, examining counsel's defense after it has
> proved unsuccessful, to conclude that a particular act
> or omission of counsel was unreasonable.  A fair
> assessment of attorney performance requires that every
> effort be made to eliminate the distorting effects of
> hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the
> conduct from counsel's perspective at the time. Because
> of the difficulties inherent in making the evaluation,
> a court must indulge a strong presumption that
> counsel's conduct falls within the wide range of
> reasonable professional assistance; that is, the
> defendant must overcome the presumption that, under the
> circumstances, the challenged action "might be
> considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v.
Wheatherwax, 77 F.3d 1425, 1431 (3d Cir. 1996), cert. denied 519
U.S. 1020 (1996).

In this case, Petitioner raised these ineffective assistance claims on direct appeal. The Appellate Division declined to resolve the issue on direct appeal, stating that it was more appropriate in a petition for post-conviction relief. (Ra 7 at pp. 24-25). Thereafter, Petitioner raised the claims in his motion for post-conviction relief. The trial court, citing the appropriate <u>Strickland</u> standard, found:

> What counsel was faced with was an admission by Mr. Romelus that he was present at the scene. That was a fact that was going to go before the jury that defendant had made a statement placing himself at the scene. What counsel attempted to do was to craft a defense around that fact that Mr. Romelus was present at the scene, but that his presence did not involve him in the murder; essentially that Mr. Romelus may have been there, but that other people were engaged in purposeful and knowing conduct; that they committed a murder; that Mr. Romelus did not share that purpose, that he did not participate in that act, and that therefore he is not responsible as either a principal or an accomplice to active murder. A difficult defense, but one that was crafted around the existing fact that Mr. Romelus admitted he was there. The defense didn't work. Defendant was convicted. That does not mean that counsel was deficient in presenting the defense.
>
> In evaluating whether or not counsel was deficient, as I indicated the standard is were the errors committed by defense counsel so serious as to effectively deny the defendant of representation. This is a case where defense counsel worked with what he had. While it can be argued and has been argued by [counsel] that he would have tried the case in a different way, I suppose any number of experienced defense counsel may have looked at the record of this case, picked it apart and found other places where they would have acted differently, perhaps asked a different question, presented something in a different way.

> I do not conclude that counsel's performance in this case was so deficient as to deny the defendant representation of an attorney.  He worked with the facts he had.  He advanced a defense as it turns out was not accepted by the jury, but it was a defense which had to it certain logic, a certain attempt to mitigate Mr. Romelus's involvement in an act in which Mr. Romelus placed himself at the scene.

(Ra 39 at pp. 14-15).  The trial court went on to hold that counsel's actions were not ineffective assistance, and that the evidence against Petitioner was "substantial, almost overwhelming."  (Ra 39 at p. 17).

The Appellate Division, again citing Strickland, agreed with the trial judge that "there is an insufficient basis for a finding that defendant received ineffective assistance." Further, the Appellate Division noted that "in light of the factual background, there is no basis for a finding that the result would have been different even if the alibi defense had been proved."  The Appellate Division concluded that Petitioner's arguments were "without sufficient merit to warrant further discussion."  (Ra 15 at p. 4).

This Court has reviewed the record.  The evidence against Petitioner, including eyewitness testimony and the Petitioner's own statement, were weighed by the jury to find Petitioner guilty.  Petitioner cannot overcome the strong presumption that the complained of actions of counsel were sound trial strategy. Additionally, both the trial court and the Appellate Division cited the appropriate Strickland standard, and reasonably

15

determined how to apply the law to the facts.  As such,
Petitioner has not demonstrated that the actions of the state
courts, which applied the proper federal law, "resulted in a
decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by
the Supreme Court of the United States," or "resulted in a
decision that was based on an unreasonable determination of the
facts in light of the evidence presented in the State court
proceeding."  Accordingly, these grounds for a writ of habeas
corpus will be denied.

C.   **Claim Regarding Witness Identifications** (Ground Three)

Petitioner argues that the witness identifications of him
were unreliable due to the time that elapsed between the charged
crimes and the photographic identifications, approximately 10
months.

In this case, a lengthy, pre-trial hearing was held pursuant
to United States v. Wade, 388 U.S. 218 (1967).  The trial court
found that the identifications were sufficiently reliable to be
presented at trial.  (Ra 25 at pp. 22-27).  The trial court
found:

> I'm satisfied that with respect to any photo
> identification of the defendant Romelus by any of the
> witnesses that detectives [] did not make any
> suggestive answer to the witnesses that Mr. Romelus'
> picture was in the display, nor did he suggest to any
> of them which photograph to pick out.  They were in
> effect merely asked can you identify anyone.  I'm
> satisfied each identification was the result of

independent recollection of each witness.  I'm also
satisfied that none of the photos used to identify Mr.
Romelus were impermissibly suggestive. [Certain photos]
all contained Black males of approximately the same age
with various skin tones.  In neither [photo] is Mr.
Romelus the only one with a dark complexion and a broad
nose, and in [a certain photo] he too is not the only
one with a broad nose.  The size of the faces shown in
each photograph is also approximately the same.

It can be said arguably that photograph number 3
and – of Mr. Romelus in [a certain photo] showing his
side view is suggestive in the sense that the orange
collar of his shirt is similar to the collar shown in
[the other photo], but it is not impermissibly
suggestive since the reason for [the side view photo]
was to have [a witness] look at the profile of Mr.
Romelus after she had already identified him in
[another photo] wearing an orange collar.

Also as to [one of the photos] I find that no
impression of prior writing of any witness on the back
of the photograph could be observed by the later
witness when shown the array in the manner in which it
was shown.  Also the one-on-one view . . . I find was
not impermissibly suggestive since [it] was shown to
him only after he had described the defendant to
Detective Furda and then was asked if the photograph
was that of Mr. Romelus.  Therefore, none of the
identifications of the defendant Romelus are
suppressed.

(Ra 25 at pp. 26-27).

Petitioner raised this argument on direct appeal.  The

Appellate Division, finding no error, cited Simmons v. United

States, 390 U.S. 377 (1968), and found that there was "no

evidence to support a finding that the identification was unduly

suggestive and the mere passage of time does not violate

Simmons."  (Ra 7 at p. 14)(citations omitted).

17

In Simmons v. United States, the Supreme Court held that:

. . . each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

Simmons, 390 U.S. at 384; see also Neil v. Biggers, 409 U.S. 188 (1972) (mere passage of time between crime and the identifications is not determinative of admissibility, but bears on weight of identification evidence).

This Court has reviewed the record and finds no constitutional violation concerning the witness identifications. Further, the jury was able to consider the reliability of the identifications, make credibility determinations as to the witnesses, and consider all factors in making its decision.  In this case, the jury found Petitioner guilty.  Petitioner has not demonstrated that the actions of the state courts, which applied the proper federal law, "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Accordingly, this ground for a writ of habeas corpus will be denied.

18

**D.**   <u>**Claim Regarding Petitioner's Statements**</u> (Ground Four)

After Petitioner's arrest and placement in the county jail, but before his indictment was issued, Petitioner had an acquaintance at the jail tell detectives that he wanted to speak with them.  The detectives told the acquaintance that because Petitioner was represented, they would only speak to him if Petitioner initiated contact with them.  Petitioner contacted the detectives, was given his <u>Miranda</u> rights, and made written and oral statements that contradicted earlier statements and placed him at the scene of the crime.  These statements were used against him at trial.  Petitioner argues that these statements were taken in violation of his Sixth Amendment right to counsel, as the detectives who took the statements knew that he was represented by an attorney.

Petitioner was afforded a pre-trial hearing pursuant to <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).  The trial judge ruled that all statements made by Petitioner were voluntary, and that Petitioner executed a valid waiver of his rights for each statement.  (Ra 25 at pp. 3-13).

Petitioner raised the argument that the statements were taken in violation of his Sixth Amendment right to counsel on direct appeal.  The Appellate Division noted that Petitioner's Sixth Amendment right to counsel had not yet attached, as he had not yet been indicted for the crimes.  (Ra 7 at pp. 16-17).

Further, the Appellate Division found that Petitioner initiated the conversation with the detectives, and that while that may have demonstrated poor judgment, it was not tantamount to a violation of his Fifth Amendment right against self-incrimination. (Ra 7 at p. 18). The Appellate Division held:

> Defendant here received his <u>Miranda</u> rights, executed the waiver, and then, within the statement expressly indicated his intention to speak to investigators without an attorney present. The mere fact that a suspect has an attorney representing him cannot be construed to preclude the suspect from waiving that right so long as the waiver is knowing and intelligent. We find no error in the admission of defendant's statements.

(Ra 7 at pp. 18-19)(internal citations omitted).

Again, a review of the record indicates that Petitioner, himself, initiated statements to the police through his acquaintance. As the Supreme Court noted in <u>Miranda</u>:

> Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.

<u>Id.</u> at 478; <u>see also</u> <u>Rhode Island v. Innis</u>, 446 U.S. 291 (1980).

With regard to the Fifth Amendment, once a suspect invokes his right to counsel or his right to remain silent, the police

20

must scrupulously honor that assertion.  See Miranda, 384 U.S. at 478-79.  Once an accused has invoked the right to counsel all interrogation must cease until an attorney has been made available to him.  See Edwards v. Arizona, 451 U.S. 477, 484-85 (1981).  In the case at issue, Petitioner did not invoke the right to counsel before making his voluntary statements to the police.

With regard to the Sixth Amendment, "a person is entitled to the help of a lawyer 'at or after the time that adversary judicial proceedings have been initiated against him ... whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'"  Estelle v. Smith, 451 U.S. 454, 469-470 (1981)(citations omitted).  In this case, the statements at issue were made before Petitioner was formally charged with the crimes.

Further, the state courts invoked the correct law, held a hearing pursuant to Miranda, and reasonably determined the facts in light of the evidence presented.  Thus, Petitioner has not demonstrated that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

21

proceeding."  Accordingly, this ground for a writ of habeas corpus will be denied.

**E.    Claim Regarding Trial Court Actions** (Ground Five)

Petitioner argues that the trial court improperly appointed an attorney to speak with one of his alibi witnesses, to inform the witness of his Fifth Amendment privilege against self-incrimination.  The witness was told by counsel that if his statement in court was different from his out-of-court statement, he could be charged with a crime.  The witness invoked his right against self-incrimination, and the trial court ruled it would not compel his testimony.  (Ra 34 at pp. 126-143).

Petitioner raised this argument on direct appeal.  Citing New Jersey law, the Appellate Division found that the trial judge did not abuse his discretion in advising the witness of his privilege against self-incrimination and appointing an attorney to inform and represent him.  The Appellate Division held:

> We find no basis for any claim of plain error in this case.  The proposed testimony was cumulative to two other witnesses who did in fact testify.  It is speculative to assume that [this witness'] absence, unknown by the jury, had any effect on the verdict.  In fact, the statements of the proposed witness and the understandable reluctance of defense counsel to call the witness show that [the witness'] attitude and his prior inconsistent statement could well compromise or defeat the alibi testimony of the other witnesses.

> We find no abuse of discretion in the trial judge advising [the witness] of his privilege against self-incrimination and appointing an attorney to represent him.  No abuse of discretion occurs so long as the possibility that the witness will be charged with a

22

> crime as a result of his or her testimony is not
> remote, unrealistic or speculative.  Even assuming
> error in failing to require [the witness] to testify,
> we find that the error was harmless and does not meet
> the plain error standard.

(Ra 7 at p. 21)(internal citations omitted).

Petitioner asserts that the actions of the trial judge violated his constitutional rights.  However, it has been held that federal courts must afford the states deference in their determinations regarding evidence and procedure.  See Crane v. Kentucky, 476 U.S. 683, 690 (1986)(stating "we have never questioned the power of the States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability, even if the defendant would prefer to see that evidence admitted").  It is well-established that "a state court's misapplication of its own law does not generally raise a constitutional claim.  The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."  Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997)(citations omitted), cert. denied, 522 U.S. 1109 (1998).

Assuming, arguendo, that the trial judge did err under state law in informing the witness of his right against self-incrimination, a state's misapplication of its own law may constitute a violation of due process only in "rare" cases.  See

23

id. ("when that misapplication has the effect of depriving a person of life, liberty, or property without due process of law in violation of the Fourteenth Amendment, the resulting federal constitutional error can be corrected by a federal habeas court").  Evidentiary rulings may violate due process when the petitioner "was denied fundamental fairness at trial."  Hutchins v. Hundley, 1991 WL 167036 at *4 (D.N.J. Aug. 22, 1991)(Wolin, J.)(citations omitted); see also Kontakis v. Beyer, 19 F.3d 110, 120 (3d Cir.), cert. denied, 513 U.S. 881 (1994); Lisenba v. California, 314 U.S. 219, 228, 236 (1941)(holding that state court's evidentiary rulings may form the basis for habeas relief when they "so infused the trial with unfairness as to deny due process of law").

The appropriate inquiry is "whether the claimed error of law is a fundamental defect which inherently results in a complete miscarriage of justice or in an omission inconsistent with the rudimentary demands of fair procedure."  Hutchins, 1991 WL 167036 at *4 (citing United States v. De Luca, 889 F.2d 503, 506 (3d Cir. 1989), cert. denied, 496 U.S. 939 (1990))(other citations omitted).  The Supreme Court has further stated that "an otherwise valid conviction should not be set aside if the reviewing court may confidently say on the whole record that the constitutional error was harmless beyond a reasonable doubt."  Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986).  An error is

not harmless if "it aborts the basic trial process or denies it altogether." Hutchins, 1991 WL 167036 at *5 (citing Rose v. Clark, 478 U.S. 570, 578 n.6 (1986)).

In the instant case, this Court finds that Petitioner's case is not the "rare" instance where evidentiary rulings have violated his rights to due process. A review of the whole record demonstrates that the trial process was fundamentally fair. Further, as the Appellate Division pointed out, the testimony of the witness would have been cumulative to the testimony of the two previous witnesses: that Petitioner was not at the scene of the crime. And, as the Appellate Division noted, there was a strong likelihood that the witness' statement may have compromised or defeated the alibi testimony of the previous witnesses.

Thus, the Court finds that the testimony presented at trial and considered by the jury was sufficient to render Petitioner's conviction a valid conviction, and that he was not deprived of due process due to the lack of this witness' testimony.

Further, the state court determinations have not "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

25

proceeding."  Accordingly, this ground for a writ of habeas corpus will be denied.

**F.   Claims Regarding Jury Instruction**

1.   Identity Instruction (Ground Six)

Petitioner argues that the trial court's charge regarding identity was incomplete and incorrect in that the trial court: (1) did not remind the jury that one of the witnesses, hours after the crime, was unable to identify Petitioner; (2) did not mention that the identification took place ten months after the crimes, and that each witness told police hours after the crimes that they could not make an identification; and (3) that the trial court stated that someone had identified Petitioner, although that person had testified that he did not identify Petitioner.

The trial judge charged, in relevant part:

> In order to meet its burden with respect to the identification of the person who committed the crimes charged, you will recall the state has presented the testimony of various witnesses: [list of witnesses]. You recall that those witnesses identified the defendant as the person who committed the offenses charged either as a principal or accomplice.  According to those witnesses, their identification of the defendant is based upon the observations and perceptions which they made of defendant on the scene at the time the offenses were being committed.  It's your function as jurors to determine what weight, if any, to give to their testimony.  You must decide whether it is sufficient or reliable evidence upon which to conclude that this defendant is the person or one of the persons who committed the offenses charged.

(Ra 36 at p. 133).

Petitioner raised this claim on direct appeal.  The Appellate Division found that although the trial judge mistakenly listed one witness as having testified against Petitioner, who did not actually testify against Petitioner, that there was "no plain error clearly capable of producing an unjust result but only harmless error that could not have caused the jurors to convict when they otherwise would have acquitted."  (Ra 7 at p. 22).  The Appellate Division also found no plain error due to the fact that the trial judge instructed jurors that regardless of what he said in recalling the facts, their recollection of the facts controlled.  (Ra 7 at p. 23; Ra 36 at p. 73).

With regard to Petitioner's claim that the trial judge did not detail the time issues concerning the witness' identifications, the Appellate Division found that under the facts of the case, the judge was not required to do so.  The Appellate Division found that "considering the multiple identifications both in-court and out of court in the case at bar we find the identification charge to be adequate, appropriate and not plain error."  (Ra 7 at p. 24).

    2.   <u>Accomplice Liability Instruction</u> (Ground Seven)

Petitioner argues that the trial court failed to include in its instruction regarding accomplice liability the facts of the case that would have explained the possible difference in intents

27

between a principal and an accomplice.  The trial court charged, in relevant part:

> A person is legally accountable for the conduct of another when he is an accomplice of such other person in the commission of an offense.  A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of the offense, he solicits such other person to commit it or aids or agrees or attempts to aid such other person in planning or committing it.
>
> It is not your concern, nor is it a defense, that the other person or persons claimed to have also committed the offenses are not being prosecuted in this case.  That is because not only is one who actually commits a criminal act responsible for it, but one who acts as his accomplice is also responsible.  Therefore, you are instructed that the defendant would be guilty of the crime charged if committed by himself or if he acted as an accomplice of another person provided you are convinced beyond a reasonable doubt that he solicited, aided or attempted to aid or agreed to aid the other person who committed the crime and did so with the purpose of facilitating the commission of the crime.

(Ra 36 at pp. 125-126).  The court went on to charge the definition of the word "aid."  (Ra 36 at pp. 126-127).

Petitioner raised this claim on direct appeal, and the Appellate Division found the argument "lacked substance" and that the instructions were in accord with New Jersey law.  (Ra 7 at 24).

3.  <u>Analysis</u>

Challenges to jury instructions solely as in error under state law do not state a claim cognizable in federal habeas corpus proceedings.  See <u>Engle v. Isaac</u>, 456 U.S. 107 (1982);

28

Zettlemoyer v. Fulcomer, 923 F.2d 284, 309 (3d Cir.), cert. denied, 502 U.S. 902 (1991); Grecco v. O'Lone, 661 F. Supp. 408, 412 (D.N.J. 1987)(Thompson, J.)("Questions concerning instructions are normally matters of state law and are not cognizable in federal habeas corpus review.").  The finding by the state appeals court should be "the end of the matter of possible error based on the measuring of the evidence against the state law because state, not federal, courts decide these things."  Morgan v. Krenke, 232 F.3d 562, 567 (7th Cir. 2000), cert. denied, 532 U.S. 951 (2001).

Federal courts will evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process.  See Estelle v. McGuire, 502 U.S. 62 (1991); Cupp v. Naughten, 414 U.S. 141, 146 (1973); Henderson v. Kibbe, 431 U.S. 145, 154 (1977); United States ex rel. Harding v. Marks, 541 F.2d 402, 405 (3d Cir. 1976).  The court will then determine whether the ailing instructions so infected the entire trial so that the resulting conviction violated due process rendering the trial fundamentally unfair.  See Estelle, 502 U.S. at 71.  Thus, the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law."  Smith v. Horn, 120 F.3d 400, 416 (1997); see also In re Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the

accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); <u>Sandstrom v. Montana</u>, 442 U.S. 510, 523 (1979) (jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused).

Where such a constitutional error has occurred, it is subject to "harmless error" analysis.  See <u>Smith v. Horn</u>, 120 F.3d at 416-17; <u>see also</u> <u>Neder v. United States</u>, 527 U.S. 1, 8-11 (1999).  "[I]f the [federal habeas] court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, the error cannot be deemed harmless."  <u>Id.</u> at 418 (citing <u>California v. Roy</u>, 519 U.S. 2, 5 (1996)).  In evaluating a challenged instruction:

> a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.  If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.

<u>Middleton v. McNeil</u>, 541 U.S. 433, 436 (2004) (internal quotations and citations omitted).

The Court has reviewed the record and the challenged instructions.  The Court finds that the jury instructions did not result in a fundamentally unfair trial or a violation of

Petitioner's due process rights.  Evidence at trial consisted of various witnesses' testimony, the credibility of which was to be weighed by the jury.  There is no indication that the jury misapplied the challenged instruction; as explained by the Appellate Division, the trial judge's charges were adequate and consistent with state law.  However, even if the charges were improper, which neither the state courts nor this Court finds, any error would be considered harmless in that it did not have a substantial effect on the verdict.

Thus, Petitioner has not demonstrated that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Accordingly, these grounds for a writ of habeas corpus will be denied.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254 is denied.  The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the

denial of a constitutional right, as required by 28 U.S.C. §
2253.

An appropriate Order accompanies this Opinion.


                                    ___/s/  Faith S. Hochberg___
                                    United States District Judge


Dated: September 21, 2005